Ricky R. HADLOCK, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

No. 75536.

Supreme Court of Missouri, En Banc.

Aug. 17, 1993.

Rehearing Denied Sept. 28, 1993.

Bruce Brown, James R. Brown, Kearney, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

The circuit court suspended appellant's driving privilege pursuant to the provisions of the Administrative D.W.I. Law, §§ 302.-505—302.540, RSMo 1986.[1] The evidence consisted solely of the records of respondent. Respondent's file contained a police report made by the arresting officer, a printout of the breath analysis results and a form completed by the chemical test operator. Despite appellant's hearsay and foundation objections, the reports were admitted into evidence pursuant to § 302.312, RSMo Supp. 1992, which permits "copies" of respondent's files certified by the custodian to be admitted into evidence in "the same manner and with like effect as the originals."

The crux of this case is whether respondent's file is admissible without supporting foundation testimony. Resolution of this issue necessarily requires an examination of the specific language of § 302.312. We have jurisdiction pursuant to Mo. Const. art. V, § 10, and reverse the decision of the circuit court.

## I

Appellant Ricky R. Hadlock was observed driving 55 m.p.h. in a 35 m.p.h. zone on April 10, 1991, at approximately 1:10 a.m. He was stopped by Officer Nelson Burgen, who noted a strong odor of intoxicants on or about appellant's person. Hadlock was then given field sobriety tests, arrested at approximately 1:20 a.m., and transported to the Riverside Police Department where he submitted to a breath analysis test. The test was conducted by James D. Baughman with an Alco-Analyzer 2000. A form completed by Baughman indicates that Baughman explained to appellant his rights under the implied consent law at approximately 1:51 a.m. The form further indicates that this explanation occurred prior to the administration of the test.

The printout of the chemical test results attached to the form, however, indicates that the chemical analysis began at "0101:50" or approximately 1:02 a.m. Thus, the printout

is inconsistent with the time that the implied consent information was given, and with the time that appellant was initially stopped by the arresting officer.

Baughman also completed another checklist regarding the test, which included "box 7." Box 7 states:

7. After printout, tear off chromatogram and fill in name of operator and subject. Attach printout to this report.

This box was checked, and Baughman certified that "there was no deviation from the procedure approved by the department." The name of the subject of the printout submitted with respondent's records, however, was not indicated on the printout. The printout states that the blood alcohol content of the subject was .158 percent.

Section 302.505 provides for an administrative suspension of driving privileges when the Department determines that a person was arrested upon probable cause to believe the person was driving with a blood alcohol concentration equal to or greater than .13 percent.[2] This type of administrative suspension is completely independent from an adjudication of any criminal charges arising out of the same occurrence under Chapter 577. The determination is based upon a report made by a law enforcement officer as required in § 302.510. The determination is final unless a hearing is requested and held. *§ 302.505.2.* In this case, appellant requested a hearing, and the initial suspension was upheld.

Appellant then filed an application for a trial de novo in circuit court, pursuant to § 302.535. At trial, respondent proved its case solely by the introduction of the printout and reports of the arresting officer and the chemical test operator. These records, without any additional foundation evidence, were offered and received into evidence pursuant to § 302.312, RSMo 1992, as documents lawfully filed with the Department of Revenue and certified by the custodian. The circuit court then found that appellant's driving privilege was subject to suspension.

---

1. All references are to RSMo 1986, unless otherwise indicated.

2. The statute has since been amended. It now only requires that the blood alcohol content equal or exceed .10 percent.

## II

■ Before a document may be received in evidence, it must meet a number of foundational requirements including: relevancy, authentication, the best evidence rule, and hearsay. With the possible exception of relevancy, a statute may eliminate one or more of these obstacles with regard to a particular document.[3] We must determine whether the records admitted in this case meet these requirements or to what extent the requirements are eliminated by statute.

Unlike the federal rules of evidence, Missouri has no statutory or common law provision as to all public documents. Rather, Missouri has a number of statutes that remove some or all of the standard requirements of admission for various public documents. One such statute is § 302.312, which provides:

> **Department of revenue and department of health, bureau of vital statistics, records admissible in evidence, when.—** *Copies* of all papers and documents lawfully deposited or filed in the offices of the department of revenue or the bureau of vital records of the department of health and copies of any matter recorded in the offices, properly certified by the appropriate custodian or the director, *shall be admissible as evidence in all courts of this state in the same manner and with like effect as the originals.*

(Emphasis added.)

■ The language "shall be admissible as evidence in all courts of this state" is similar to language in other evidentiary statutes that makes certain public documents "admissible" subject only to their relevancy to the case at hand. For example, § 490.220 states that all records kept in any public office of the United States or a sister state "shall be evidence in this state" if attested by the keeper of the records and with the keeper's seal. So long as the requirements of the statute are met and the records are relevant, they are admissible.[4] *Wiggins v. Coy,* 462 S.W.2d 751 (Mo. 1971); *State v. Gray,* 423 S.W.2d 776 (Mo. 1968). Such statutes are desirable to eliminate the inconvenience and expense of live but generally uncontested foundation testimony. *See Carp v. Queen Insurance Co.,* 203 Mo. 295, 101 S.W. 78, 89 (1907); *State v. Medley,* 588 S.W.2d 55, 58 (Mo.App.1979).

■ Like § 490.220, it might be argued that by using the language "shall be admissible as evidence in this state" the legislature intended for § 302.312 to make records of the Department of Revenue admissible without further foundation. Section 302.312, however, contains additional language stating "in the same manner and with like effect as the originals." Under traditional rules of statutory construction, we are required to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Jones v. Director of Revenue,* 832 S.W.2d 516 (Mo. banc 1992). Further, each word, clause, sentence and section of a statute should be given meaning. *State ex rel. Missouri State Bd. of Registration for Healing Arts v. Southworth,* 704 S.W.2d 219 (Mo. banc 1986).

■ Accordingly, we cannot ignore the final portion of § 302.312, which states "in the same manner and with like effect as the originals," and which must be read as an additional limitation.[5] The statute permits "copies" to be admitted "in the same manner and with like effect as the *originals* " and no

---

3. *See* Rhonda Churchill Thomas, Comment, *Documents as Evidence in Missouri,* 38 Mo.L.Rev. 475 (1973).

4. Similarly, § 490.130 states that copies of court records attested by the clerk with the seal of the court "shall be received as evidence of the acts or proceedings of such court of record in any court of this state." This statute not only makes the documents self-authenticating, but permits copies to be admitted over best evidence objections. *State v. Feeler,* 634 S.W.2d 484, 487 (Mo. App.1981).

5. Our holding is contrary to that in *State v. Flowers,* 597 S.W.2d 276 (Mo.App.1980), which interpreted this phrase as "words of enlargement" without further explanation. We find this interpretation erroneous because it ignores the plain and ordinary meaning of the phrase and renders the additional language meaningless. Three subsequent cases simply admitted without analysis records from the Director of Revenue, pursuant to § 302.312. *See State v. Sumpter,* 655 S.W.2d 726 (Mo.App.1983); *State v. Wilson,* 651 S.W.2d 512 (Mo.App.1983); *State v. Jackson,* 690 S.W.2d 491 (Mo.App.1985).

more. Section 302.312 simply alleviates the need for the original documents of the Department of Revenue, Department of Health, and the Bureau of Vital Statistics, which would otherwise be required under the best evidence rule. The statute only requires certification that the copy is a true and accurate copy of the original. Perhaps unfortunately, the language of the statute leaves these copies subject to the same foundation objections as would be their originals: authentication and hearsay. No foundational evidence was offered in this case, and the documents were not properly admitted.[6]

Our interpretation of § 302.312 is in accord with several other cases involving statutes with similar qualifying language as "in the same manner and with like effect as the original." In these cases, there has always been an attesting witness to authenticate the document, or objections to the introduction of the document were not validly preserved for review. These statutes were construed simply as making a statutory exception to the best evidence rule. The documents were still subject to objections on other grounds. *See State v. Holmes*, 419 S.W.2d 15, 17–18 (Mo. 1967); *State v. Ferrara*, 320 S.W.2d 540, 546 (Mo.1958); *Herrington v. Hoey*, 345 Mo. 1108, 139 S.W.2d 477, 481 (1940); *State v. Knight*, 703 S.W.2d 588, 589 (Mo.App.1986); *State v. Baity*, 494 S.W.2d 425, 428 (Mo.App. 1973).

### III

Even had the documents been properly admitted, they contain a number of inconsistencies that exhibit the difficulty of attempting to make a case on documents alone. First, it is not clear that the printout of the chemical test results attached to the form is appellant's. The printout does not bear appellant's name, and Officer Baughman certi-

fied by checking box 7 that he filled in the name of the subject.

In addition, the implied consent form indicates that appellant did not submit to the test until sometime after 1:51 a.m., yet the printout indicates that the test might have been given at 1:02 a.m. The arresting officer's report further indicates that Hadlock was stopped at 1:10 a.m. and arrested at 1:20 a.m. By relying solely on the records themselves, respondent was unable to explain these discrepancies.[7]

Because we find the documents were inadmissible for lack of authentication, we need not determine whether the above inconsistencies, independently, might have precluded the documents' admission or whether the documents would have failed to support the trial court's judgment. However, they do indicate the careful review required in ruling a case submitted solely on paper. We also need not address appellant's other contentions that the admission of the documents violated his right to confront and cross-examine witnesses and that the officer lacked probable cause at the time of the stop.

### IV

Accordingly, the decision of the circuit court is reversed and remanded.

COVINGTON, C.J., and HOLSTEIN, THOMAS, LIMBAUGH, ROBERTSON, JJ., and GERALD SMITH, Special Judge, concur.

BENTON, J., not sitting.

---

6. Respondent's records might also have been offered pursuant to § 490.692, RSMo Supp.1991, which provides a method for making business records admissible. However, § 490.692 requires that copies of the document and an attesting affidavit be given to all parties at least fourteen days (now seven days, § 490.692, RSMo Supp.1992) prior to trial. The record does not show that respondent complied with the requirements of the statute.

7. Respondent argues in its brief that Daylight–Saving Time went into effect approximately 72 hours before appellant was given the test. Thus, respondent contends that the machine was not set forward, and the actual time the test began was approximately 2:02 a.m. By relying solely on respondent's files, however, this did not come into the record below. Even if we were to take judicial notice of the time change, there is no evidence whether the machine was or was not set forward.